IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. 1:18-cv-02794 |
| v. | : : : | |
| DEFENDERS, INC. d/b/a PROTECT YOUR HOME, SUGAR VENTURES, LLC, FREDERICK T. HICKERSON III and STERLING SILVER ASSETS CORP. | : : : : : : | **Jury Trial Demanded** |
| Defendants. | : : / | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff George Moore ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Defendant Defenders, Inc. d/b/a Protect Your Home ("Defenders") hired Sugar Ventures, LLC ("Sugar Ventures") to generate new business for Defenders.

3. To do that, Sugar Ventures hired Sterling Silver Assets Corp. ("Sterling Silver") and Frederick T. Hickerson III to place telemarketing calls, for the purposes of advertising its goods and services. Among the individuals they called was a telephone number Mr. Moore had registered on the National Do Not Call Registry, in violation of the TCPA.

4. Mr. Moore never consented to receive these calls, and they were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Moore brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

5. Defenders also then directly called Mr. Moore repeatedly, despite his request to receive no further calls and be placed on Defender's Internal Do Not Call list.

6. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

7. Plaintiff George Moore is a resident of Illinois in this District.

8. Defendant Defenders, Inc. d/b/a Protect Your Home is an Indiana corporation that has its principal office in Indianapolis, Indiana, with a registered agent of Mark J. Colucci, 3750 Priority Way South Drive, Indianapolis, Indiana 46240. Defenders is registered to do business in Illinois through the Illinois Secretary of State, and it is licensed as a private alarm contractor agency through the Illinois Department of Financial and Professional Regulation (License No. 127001042).

9. Defendant Sugar Ventures is a Delaware limited liability company based in Irvine, CA with a registered agent of Joseph H. Britton at 4405 Spectrum, Irvine, CA 92618.

10. Defendant Sterling Silver Assets Corp. is a Florida corporation with a principal address of 1108 Mango Isle in Fort Lauderdale, FL 33315.

11. Defendant Frederick T. Hickerson III is the owner, operator and registered agent of Sterling Silver Assets Corp.

12. The Defendants place telemarketing calls into this District, or authorized the same, as they did with the Plaintiff.

### Jurisdiction & Venue

13. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendants are a resident of and do business in this District, and because Plaintiff Moore is a resident of this District, which is where he and other class members in this District received the illegal telemarketing calls that are the subject of this putative class action lawsuit.

### TCPA Background

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. §§ 64.1200(c)(2) and (e).

18. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

19. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

**The TCPA Imposes Personal Liability on Individuals Who Participate in or Commission the TCPA Violations**

20. Under the TCPA, an individual such as Mr. Hickerson, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47. U.S.C. § 217.

21. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or

4

personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

22. Defendant Mr. Hickerson is personally liable under the "participation theory" of liability because he was the controlling officer of Sterling Silver, knew of Sterling Silver's telemarketing conduct, and directed the violations at issue.

23. Mr. Hickerson authorized and oversaw Sterling Silver's telemarketing processes.

**Factual Allegations**

24. Defenders is an Authorized Dealer for ADT Security.

25. As an Authorized Dealer, Defenders is compensated by ADT for generating new customers.

26. To generate new customers for ADT, Defenders relies on outbound telemarketing.

27. Mr. Moore's residential telephone number, (630) 510-XXXX, has been on the National Do Not Call Registry for years prior to the receipt of the calls at issue.

28. Mr. Moore has never removed his residential telephone number from the National Do Not Call Registry.

29. On February 27 and 28, 2018, Sterling Silver, directed by Mr. Hickerson, made telemarketing calls to Mr. Moore's residential telephone number.

30. These calls were made by Sterling Silver and Mr. Hickerson as part of their arrangement with Sugar Ventures in order to promote Defender goods and services.

31. However, the Plaintiff was unaware that Sterling Silver and Mr. Hickerson made the calls because the company was never properly identified in the telemarketing calls.

32. The Plaintiff received calls from the following Caller ID number: (714) 790-0073.

33. Unfortunately, the Plaintiff is not the only individual who has been disturbed by Defenders' calling practices, as other individuals have complained about getting calls from the same CID number from around the same time that the Plaintiff was called:

> **SueG**
> 1 Mar 2018
> Call from this number two days in a row without leaving a message….
>
> **Bonnie**
> 12 Mar 2018
> Hang up call.

https://800notes.com/Phone.aspx/1-714-790-0073 (last visited April 19, 2018).

> 1, Mar. 2018  THEY ARE BREAKING THE LAW AND INVADING THE PRIVACY OF EVERY PERSON THEY CALL!

http://www.whycall.me/714-790-0073.html (last visited April 19, 2018).

34. When the Plaintiff tried to call that number back, it was a non-working telephone number.

35. After these calls, Mr. Moore received a series of calls from Defenders directly on March 1 and March 5, 2018.

36. Mr. Moore was able to identify the company making the call because they stated who they were.

37. For example, the March 1, 2018 call stated that it was "Cheyna with Protect Your Home, which Defenders does business as.

38. "Cheyna" then attempted to sell the Plaintiff the Defendants' goods and services.

6

39. After identifying that the Defendant was responsible for the calls to the Plaintiff, the Plaintiff requested that he no longer receive communications from the Defendant, even though he was listed on the National Do Not Call Registry.

40. Despite that request, Mr. Moore continued to receive calls from the Defendants, including on March 9 and 13, 2018.

41. Defenders' policy with regard to Do Not Call compliance – both with regard to DNC Registry and internal DNC – is insufficient.

42. Additionally, while Defenders had the capability to honor internal Do Not Call requests nearly instantaneously, it willfully waited to honor such requests in order to do additional telemarketing.

43. The generic nature of these calls was also revealed in a call from "Alissa" and "Debbie" in March of 2018, which began with "we are calling to provide home owners state of the art home security system. There is no cost for the system. I just need to know am speaking with the decision maker of the home?"

44. This was a scripted telemarketing pitch, not designed specifically for Mr. Moore or anyone else, but intentionally broad enough to apply to any of the "cold calls" that the Defendants were making.

45. "Debbie" gave her employee ID as 18422.

46. Plaintiff is not a customer of Defendants and has not provided Defendants with his written consent to receive telemarketing calls.

47. Plaintiff and the other calls recipients were harmed by these calls. They were temporarily deprived of the legitimate use of their phones because the phone line was tied up, and their privacy was improperly invaded.

48. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

### Defenders' and Sugar Ventures' Liability for the Calls

49. Defenders is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

50. As described above, Defenders made a series of illegal telemarketing calls to the Plaintiff, which they are directly liable for.

51. However, Defenders and Sugar Ventures are also vicariously liable for the illegal telemarketing activities of Mr. Hickerson and Sterling Silver.

52. The Federal Communication Commission has instructed that sellers such as Defenders and Sugar Ventures may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

53. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations.

54. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules &*

8

*Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

55. Sterling Silver and Mr. Hickerson made the calls described herein "on behalf of" Defenders and Sugar Ventures within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

56. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations…that are committed by third-party telemarketers."[1]

57. Defenders and Sugar Ventures knowingly and actively accepted business that originated through the telemarketing calls from Sterling Silver and Mr. Hickerson.

58. Moreover, Sugar Ventures maintains control over Sterling Silver's actions, both as to telemarketing and other activities by directing the content of its conduct, including the geographic region and other parameters it would accept a customer from.

59. In turn, Defenders had control over whether, and under what circumstances, they would accept a prospective customer, and conveyed that information to Sugar Ventures.

60. In fact, Defenders actively participated in Sterling Silver's conduct as the Plaintiff was directly transferred to Defenders during the telemarketing calls on February 28 and March 13, 2018.

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, CG Docket No. 11-50, Declaratory Ruling, 28 FCC Rcd 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

61. If Sugar Ventures had monitored Sterling Silver's conduct, it would have known that Sterling Silver was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

62. Similarly, if Defenders had monitored Sugar Ventures' conduct, it would have known that Sugar Ventures had hired a call center to engage in outbound telemarketing on Defenders' behalf, and that the call center was engaging in TCPA violations.

63. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

64. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of two classes of persons or entities similarly situated throughout the United States.

65. The classes of persons Plaintiff proposes to represent is tentatively defined as:

DNC Registry Class: (1) All persons in the United States (2) whose residential phone number was listed on the National Do Not Call Registry (3) for more than 30 days (4) to whom Defendants, or any party acting on their behalf, placed more than one non-emergency telephone call (5) within any twelve-month period (6) within 4 years of the filing of the complaint through the date of trial.

Internal DNC Class: (1) All persons in the United States, (2) whose residential phone number Defender or any party acting on its behalf called twice in a twelve-month period, (3) where Defenders' policies and practice with respect to internal DNC compliance were substantially similar to those in place when Plaintiff

received his calls, where (4) any one call was received within four years of the filing of the complaint.

Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

66. The classes as defined above are identifiable through phone records and phone number databases.

67. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

68. Plaintiff is a member of each class.

69. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendants violated the TCPA by calling individuals on the National Do Not Call Registry;

    b. Whether Defendants violated the TCPA by calling individuals that were or should have been on their internal Do Not Call list;

    c. Whether Defendants' Do Not Call policies practices and procedures were sufficient, and/or whether they were followed;

    d. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

    e. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

70. Plaintiff's claims are typical of the claims of class members.

71. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

72. The actions of the Defendants are generally applicable to the class and to Plaintiff.

73. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

74. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

75. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Do Not Call provisions**

76. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

77. The Defendants violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

78. The Defendants' violations were negligent and/or willful or knowing.

12

## Count Two:
## Violation of the TCPA's Internal Do Not Call provisions

79. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

80. Defenders violated the TCPA's Internal Do Not Call provisions by making multiple telemarketing calls to the Plaintiff despite his prior requests to receive no further telemarketing contacts from them.

81. The Defendants' violations were negligent and/or willful or knowing.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendants;

B. Because of Defendants' violations of 47 C.F.R. § 64.1200(c), Plaintiff Moore seeks for himself and the class $500 in statutory damages for every violation of such regulations, or—where such regulations were willfully or knowingly violated—$1,500 per violation;

C. An award of attorneys' fees and costs to counsel for Plaintiff and the class, to the extent permitted by law;

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate class the Court deems appropriate, finding that Plaintiff is a proper representative of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class; and

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

GEORGE MOORE

Dated: August 22, 2018  By: */s/ Alexander H. Burke*
Alexander H. Burke
Daniel J. Marovitch
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (508) 221-1510
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net
*Subject to Pro Hac Vice*

*Counsel for Plaintiff*